## MARTIN et al. v. HILLEN.

(Supreme Court, General Term, Second Department. December 12, 1892.)

1. TROVER AND CONVERSION—EVIDENCE.
    In an action against a husband for the conversion of bonds alleged to be the property of the deceased wife, reciprocal wills of the husband and wife, in which no mention was made of the bonds nor of the title thereto, are not admissible in evidence.

2. SAME—TRANSACTIONS WITH DECEDENTS.
    In such case an offer by the defendant to prove that he did not know that his deceased wife owned any property except a monthly payment was properly rejected, as it involved a conversation or transaction between the witness and deceased, prohibited by Code, § 829.

Appeal from circuit court, Kings county.

Action by Mary S. Martin and another, (executrices,) against George Hillen, for the conversion of bonds alleged to be the property of plaintiffs' decedent. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

Chas. J. Patterson and E. L. Bushe, for appellant.
James & Thomas H. Troy, for respondents.

BARNARD, P. J. The issue between the parties was one of fact, and was one which was irreconcilable. The plaintiffs are executrices of their deceased mother. She was the wife of the defendant. The plaintiffs aver that their mother left certain bonds, being four bonds in the New York Elevated Railroad Company, of $1,000 each, and three bonds for $1,000 each in the Metropolitan Elevated Railroad Company; that the defendant converted the bonds to his own use. The defendant answers that the bonds were his property. Each party gave evidence tending to support their side of the issue, and the jury has found for the plaintiffs. The verdict will be held final unless the trial judge committed some reversible error on the trial. The reciprocal wills made in 1885 were properly rejected. The wills made no mention of the bonds, or of the title thereto. By the will of each the other took all, but it is impossible to infer from that fact that the conversion of the bonds, if owned by the wife, was in any manner justified in law. There is nothing in the contents of the will of Mrs. Hillen that would render it improbable that the husband converted her bonds if his title thereto was proven at the time of her death. The offer to prove by the defendant that he did not know that his wife owned any property except a monthly payment of $50 was properly rejected. It involved a conversation with the wife or a transaction with her. Code, § 829.[1] Holcomb v. Holcomb, 95 N. Y. 316. The question whether the wife was handling money belonging to the husband was properly excluded for the same reason. If it was a material fact, it was a transaction between the parties. Clift v. Moses, 112 N. Y. 426, 20 N. E. Rep. 392. We think the case was fairly tried, and that the evidence sustains the verdict of the jury. The judgment and order denying a new trial should be affirmed, with costs.

PRATT, J., (concurring.) Plaintiffs, as executrices of Anna Hillen, deceased, brought this action to recover damages for the conversion by defendant of seven $1,000 coupon bonds, of the value of $8,050, which they claimed was their property as such executrices. The defendant denied the conversion, and claimed ownership of the bonds. The jury rendered a verdict for plaintiff for $8,553.75, and the court denied de-

[1]Code, § 829, provides that upon the trial of an action a party or person interested in the event shall not be examined, as a witness in his own behalf or interest, against the executor, administrator, or survivor of a deceased person, concerning a personal transaction or communication between the witness and the deceased person.

fendant's motion for a new trial. The defendant and the deceased were husband and wife, having been married some 25 years. She died in 1890, leaving a will, which was duly admitted to probate, by which she appointed plaintiffs her executrices. They were her daughters by a former marriage. It appeared on the trial that the defendant purchased the bonds in question at different times between June, 1880, and July, 1883, in his own name, and kept them in a safe in his store until the fall of 1883, when, owing to a fire, he caused them to be handed to his wife, who put them in a trunk. The defendant testified that he owned, and at times went to, the trunk, he having one key to it, and got out the bonds at about the time the coupons became due, and sometimes found the coupons cut off a little ahead of the time they became due. That he never parted with his title to the bonds during his wife's lifetime. He also testified, and in this was corroborated by one witness, his niece, that the trunk contained wearing apparel and papers, besides these bonds, that belonged to him. It appeared from the testimony produced by plaintiffs that the deceased owned 10 or 11 bonds some 20 years ago; that whenever she left her house she took the bonds in question with her, inclosed in a muslin bag tied on her person; that she made several visits to her relatives, having these bonds in her possession, which she showed and spoke of as her own; that for several years before her death she cut off the coupons, or had her daughter cut them off, and used the proceeds; that on one occasion when she was going out of the house, and was taking her bonds with her, the defendant remarked, "She always takes her bonds with her for fear the house will burn down before she gets back;" that on one occasion the defendant asked his wife to allow him to use the bonds, which she refused to do; that on another occasion she upbraided him for not bringing her a bond she had given him the money to purchase for her, and that in reply he said, "You shall have your bond." Shortly after the death of his wife the defendant caused a key to the trunk, which she kept under her pillow, to be handed to him by the attendant, and he then took the bonds from the trunk, and carried them away. Subsequently, as the plaintiffs and their husbands testify, he admitted, in effect, that the bonds belonged to his wife. The defendant, however, denied having made any such admission, and says that he told them he owned the bonds. The trunk appears to have been brought into court, and one or two of the plaintiffs' witnesses testified that for several years before Mrs. Hillen's death it contained none of the defendant's papers, but only the bonds and other articles belonging to Mrs. Hillen. It seems to us that the court was right in submitting to the jury the question of the ownership of these bonds. Its charge was fair, and in no way prejudicial to the defendant.

The only question that remains is as to the exceptions taken by defendant. There is only one exception that appears to us to require any comment. Counsel for defendant asked this question of him: "Did you ever know of any property that your wife had, except this $50 a month that she used to get?" To this the plaintiffs objected, and the court sustained the objection, unless defendant "put it outside of any

conversation or transaction with his wife." The answer sought to be obtained was evidently "No." Suppose he had so answered, it would then have been an assertion of want of knowledge on his part, as opposed to positive statements by several witnesses. Had defendant's counsel wished to prove that the deceased did not own property he should have followed the question by others, and taken the ruling of the court upon them. The judgment and order appealed from should be affirmed, with costs.